AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 1-7-2022)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| Information associated with One Target | ) | Case No.    3:23-mj-05222 |
| Account/Identifier, for Investigation of 21 | ) | |
| U.S.C. § 841(a)(1) and Other Offenses | ) | |

```
┌─────────────────────────────────┐
│ ____ FILED ____ LODGED          │
│ ____ RECEIVED                   │
│        Jun 02, 2023             │
│   CLERK U.S. DISTRICT COURT     │
│ WESTERN DISTRICT OF WASHINGTON AT TACOMA │
│ BY _____ DEPUTY  │
└─────────────────────────────────┘
```

## APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachment A, located in the Western District of Washington, there is now concealed property and evidence described in Attachment B.  This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒  evidence of a crime;

☒  contraband, fruits of crime, or other items illegally possessed;

☒  property designed for use, intended for use, or used in committing a crime;

☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Distribution of Controlled Substances, Conspiracy |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits. Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒  Delayed notice of ___ days (give exact ending date if more than 30 days: August 30, 2023) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
☒ reliable electronic means; or ☐ telephonically recorded

_____
*Applicant's signature*

Sean Thornton, Special Agent
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or
☒ The above-named officer provided a sworn statement attesting to the truth or the foregoing affidavit by telephone/

Date: June 2, 2023

_____
*Judge's signature*

David W. Christel, United States Magistrate Judge
*Printed name and title*

City and state: Tacoma, Washington

USAO # 2022R01041

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR**

**A SEARCH WARRANT AND PEN-TRAP ORDER**

STATE OF WASHINGTON          )

                                             )          ss

COUNTY OF PIERCE             )

I, Sean Thornton, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **360-281-3526**, with listed subscriber Dana Jackson, at 3408 NE 98th Circle, Vancouver, WA 98665 (Target Telephone 1 or **TT-1**), whose service provider is Sprint, a wireless telephone service provider headquartered at 6360 Sprint Parkway, Overland Park, Kansas 66251. The Target Telephone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      This is the fourth warrant application (and request for a pen register/trap and trace device) for **TT-1** in this investigation.

## ECPA

3.      The Court has jurisdiction to issue the proposed warrant under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 1
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

<u>Pen Register Act</u>

4.     Because this warrant seeks the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

5.     The Court has jurisdiction to issue the requested pen-trap order because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2). Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

6.     This application includes all the information required by the Pen Register Act. *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1). Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney Marci L. Ellsworth that (1) identifies the Federal Bureau of Investigation (FBI) as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency. 18 U.S.C. § 3122(b). The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

7.     A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

8.     In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 2
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

communications such as emails, text messages, connection logs, and data transfers. The prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act. Accordingly, the requested warrant will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with the Target Telephone without geographic limit.

9.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order through Attachment B of the requested warrant that Sprint and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this warrant furnish, upon service of the warrant, information, facilities, and technical assistance necessary to install the pen/trap, including installation and operation of the pen-trap unobtrusively and with minimum disruption of normal service.  Any entity providing such assistance shall be reasonably compensated by the FBI, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the warrant.

10.     **Through this application, the United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).**

## AGENT BACKGROUND

11.     I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

12.     I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since May of 2017. I am currently assigned to FBI Seattle Division's Vancouver Resident Agency (VRA) in Vancouver, Washington, focusing on the investigation of organized crime, gangs, drug trafficking, and other criminal matters.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 3
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

13.     Since becoming a Special Agent, I have received specialized training from the FBI, to include completing the 21-week New Agent Training course at the FBI Academy. I have also received training in investigative methods to trace illegal proceeds and prove financial crimes, money laundering, and conduct asset forfeiture. I have participated in multiple drug investigations targeting large scale drug trafficking organizations (DTOs) as the case agent or as an investigating agent. During my tenure as an agent, I have been involved in federal and state wiretap investigations. I have debriefed defendants and witnesses who had personal knowledge regarding drug trafficking organizations. Additionally, I have participated in many aspects of drug investigations, including conducting physical surveillance, confidential source management, providing grand jury testimony, preparing search warrant affidavits, executing search warrants, and making arrests.

14.     Based upon my training and experience, I am familiar with drug traffickers' methods of operation, including their methods of distribution, storage, and transportation of drugs, their methods of collecting proceeds of drug trafficking, and their methods of laundering money. I am also familiar with methods employed by large-scale DTOs to avoid detection by law enforcement, including the use of cellular telephone technology, text messages, counter surveillance, false or fictitious identities, and encoded communications.

15.     The information contained in this affidavit is based upon knowledge I gained from my investigation, my personal observations, my training and experience, and information provided by other law enforcement officers, agents, or analysts. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and pen-trap, and therefore does not set forth all my knowledge about this matter.

16.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 (Distribution of Controlled

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 4
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   Substances and Conspiracy) have been committed, are being committed, and will be

2   committed by members of the Norteño street gang, including **Edgar Munguia Del Rayo**

3   (aka Fatboy), Nicholas Martinell-Sterling (aka Swisher), Jared Dewayne Taylor (aka

4   Privilege), Eddie Smith, and others. There is also probable cause to believe that the

5   location information described in Attachment B will constitute evidence of these criminal

6   violations and will lead to the identification of other individuals who are engaged in the

7   commission of these offenses.

8                                    **PROBABLE CAUSE**

9          17.    The United States, including the FBI, is conducting a criminal investigation

10  of the Norteño street gang operating in Southwest Washington and elsewhere. Some of

11  the identified targets include Gregory Brown, Jr. (aka Risky Malo), **Edgar Munguia Del**

12  **Rayo** (aka Fatboy), Nicholas Martinell-Sterling (aka Swisher), Jared Dewayne Taylor

13  (aka Privilege), and Eddie Smith. Beginning in fall 2019, the FBI began investigating

14  members and associates of the Norteño street gang sets Red Devil Loko (RDL), in

15  Cowlitz County, Washington, and Lokztero Norteño Gangster (LNG), in the Vancouver,

16  Washington metropolitan area and the State of Washington.[1] The investigation is focused

17  on violations of 18 U.S.C. §§ 922, 924, 1959, and 1962 (firearms offenses, violent crimes

18  in aid of racketeering, and racketeering) and 21 U.S.C. §§ 841 and 846 (drug trafficking

19  conspiracy).

20         18.    To further the goals and illicit activities of the criminal enterprise, Norteño

21  street gang members and their associates, including members of the RDL and LNG sets,

22  message and communicate using social media platforms, such as Twitter, Facebook,

23  YouTube, and Instagram, as well as through conventional telephonic contact via mobile

24  devices. Using these platforms and facilities, Norteño gang members in the Western

25  District of Washington (and elsewhere) attempt to avoid detection by law enforcement

26
27  [1] A "set" in this context refers to a chapter or subsidiary organization of a larger gang, here, the Norteño street gang.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 5
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   and communicate with other Norteño gang members and associates, including those who

2   are incarcerated in state and federal prisons, to further the goals of their criminal

3   enterprise. Agents believe **Edgar Munguia Del Rayo** utilizes **TT-1** to commit violations

4   of federal law, specifically to coordinate the local distribution of narcotics on behalf of

5   Norteño leadership.

6          19.     Using multiple Confidential Human Sources (CHSs), agents have

7   identified LNG members possessing and distributing multiple types of narcotics. Each of

8   the CHSs have been utilized independently from each other to validate or corroborate

9   additional reporting and information. This information has been acquired through the

10  course of this investigation, as well as from other agents and officers engaged in other

11  investigations.

12         20.     Since 2019 Confidential Human Source 1 (CHS-1) has intermittently

13  cooperated with the government, initially for consideration of state charges for firearm

14  possession, narcotics possession, and distribution, and later for monetary compensation.

15  CHS-1 has a criminal history record in both Washington and Oregon that includes

16  multiple felony convictions for Malicious Mischief – 2nd Degree, Residential Burglary,

17  and Robbery – 2nd Degree. During the periods of cooperation with the government,

18  CHS-1 has provided reliable and timely reporting, engaged in multiple controlled

19  purchases of narcotics and other operational taskings resulting in the issuance of search

20  warrants, seizure of narcotics and firearms, and arrests of individuals involved in criminal

21  activity.

22         21.     In October 2020, Confidential Human Source 2 (CHS-2) began cooperating

23  with the government in hopes of receiving consideration for pending state charges for

24  narcotics possession and distribution. CHS-2 has a criminal history that includes

25  convictions for Burglary, Theft, and Possession of Controlled Substances. CHS-2 has

26  previously cooperated with local law enforcement resulting in the seizure of narcotics,

27  firearms, the issuance of search warrants, the application of tracking warrants, the

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 6
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  application of electronic surveillance warrants, and the arrests of individuals involved in
2  criminal activity.

3      22.    Beginning in summer 2022, CHS-2 informed investigators that LNG
4  members were engaging in drug trafficking activities between the southwest border of the
5  United States to Clark County, Washington. To facilitate these activities LNG members
6  utilized connections with DTOs to coordinate, arrange, and execute the picking up of
7  narcotics in Southern California to be dropped off in Southwest Washington. CHS-2
8  informed investigators that Eddie Smith, among others, would drive from the Vancouver,
9  Washington area to the Los Angeles area of Southern California to purchase quantities of
10  narcotics to be brought back to Washington State.  These trips were coordinated by
11  Nicholas Martinell-Sterling and others.

12      23.    A review of open-source Facebook profiles identified a page bearing
13  display name 'Nick Sterling' residing in Vancouver, Washington. The profile URL link
14  listed on the page is 'https://www.facebook.com/nick.sterling.5439,' indicating that the
15  profile is attributed to Nicholas Martinell-Sterling. The person in the profile photograph
16  is known to investigators as Nicholas Martinell-Sterling, aka 'Swisher,' born in 1995.
17  This was confirmed by comparing the person in the profile photograph with a
18  Washington State Department of Licensing (DOL) photograph of Nicholas Martinell-
19  Sterling. These photographs were also shown to CHS-1 and CHS-2 at separate times.
20  Both CHS-1 and CHS-2 independently confirmed Nicholas Martinell-Sterling as the
21  photographed individual. CHS-1 and CHS-2 additionally confirmed that Nicholas
22  Martinell-Sterling utilizes the moniker 'Swisher.' A review of NCIC records for Nicholas
23  Martinell-Sterling revealed a total of six felony convictions including a 2015 conviction
24  for Unlawful Possession of a Firearm – 2nd Degree under Clark County Superior Court
25  Case No. 15-1-023799, and a 2017 conviction for Unlawful Possession of a Firearm – 1st
26  Degree & Assault – 2nd Degree under Clark County Superior Court Case No. 16-1-
27

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 7
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  026141. Both convictions resulted in Nicholas Martinell-Sterling receiving sentences

2  exceeding one year and one day.

### *Identification of Edgar Munguia Del Rayo*

4      24.    The Facebook profile page with username 'Frank Martinez' is a public page

5  with URL 'https://www.facebook.com/edgar.munguia.370.' Investigators are aware of

6  **Edgar Munguia Del Rayo**, born in 1995, as a documented Norteño gang member. A

7  review of phone toll records between April 8 and August 25, 2022, of telephone number

8  360-606-9126, utilized by Nicholas Martinell-Sterling, revealed 166 contacts to 360-553-

9  2709, a phone attributed to **Edgar Munguia Del Rayo** via Clark County records as the

10  number used by a listed occupant and utilities (power) subscriber at 7700 NE 72nd

11  Avenue, Apartment D204, Vancouver, beginning in December 2019. The profile page for

12  'Frank Martinez' is a photograph of an Asian male holding what appears to be a black

13  semi-automatic pistol with a red laser-sight attachment.

14      25.    Further, the profile description on the main profile page reads, 'Fuck Tepa

15  fuck SSL Fuck Mvs Fuck Stc' which I believe demonstrates the user's opposition to

16  Sureño street gang sets, specifically Tepa 13, South Side Locos, Mexican Vatos Surenos

17  13, and Sur Trece Califa 13, which are unilaterally opposed by Norteño gang members in

18  the Vancouver, Washington metropolitan area, and elsewhere.

19      26.    Investigators compared the Facebook profile photograph to a DOL

20  photograph for **Edgar Munguia Del Rayo**, which did not match the individual in the

21  photograph. A review of NCIC records for **Edgar Munguia Del Rayo** revealed a 2015

22  conviction for Assault – 2nd Degree under Clark County Superior Court Case No. 14-1-

23  007655, which originated from a 2014 arrest for Assault – 1st Degree & Drive-By

24  Shooting. This arrest is linked to a protection order stating **Edgar Munguia Del Rayo**

25  must stay away from Cuahutemoc Thomas Hernandez, aka 'Temo', born in 1997, a

26  documented Conejo Valley Loco Sureño.

27

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 8
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

27.     Investigators showed the DOL photograph of **Edgar Munguia Del Rayo** to both CHS-1 and CHS-2. Both identified the individual in the photograph as 'Edgar' utilizing the moniker 'Fatboy.' CHS-2 reported that **Edgar Munguia Del Rayo** has often been observed with Nicholas Martinell-Sterling in the Vancouver area with other Norteño gang members.

28.     The investigation revealed that the Meta Platform, Inc. accounts referenced above is/are utilized by Nicholas Martinell-Sterling, aka 'Swisher', and **Edgar Munguia Del Rayo**, aka 'Fatboy.' On November 29, 2022, 2703(d) Orders for the accounts were issued and subsequently served on Meta Platform, Inc. On December 16, 2022, I received the requested records. During a review of the account associated with Nicholas Martinell-Sterling, I found the phone number (360) 606-9126 was listed as a verified phone number by the account holder. According to Meta Platforms, Inc. this verification occurs after the account holder responds to a text message sent to the listed phone number. During a review of the account associated with **Edgar Munguia Del Rayo**, I found the phone number (360) 553-2709 listed as a verified phone number by the account holder.

### *Identification of Target Telephone 1*

29.     Investigators have also identified financial accounts associated with **Edgar Munguia Del Rayo**. One of these accounts was a motor vehicle loan through Toyota Financial Services, which confirmed the address at 7700 NE 72nd Avenue, Apartment D204, in Vancouver. Additionally, it showed phone number (360) 553-2709 as attributed to the account; however beginning in November 2022 records from Toyota Financial Services listed **360-281-3526** (**Target Telephone 1 or TT-1**) as a new mobile phone number associated with **Edgar Munguia Del Rayo**.

30.     On December 21, 2022, I received notification from DOC that **TT-1** was captured on a recorded call with inmate Jeffery Lewis. The call took place on November 8, 2022, and during the call Jeffery Lewis and **Edgar Munguia Del Rayo**, aka Fatboy, discussed multiple Norteño gang members and associates. Jeffery Lewis and **Edgar**

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 9
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  **Munguia Del Rayo** discussed multiple individuals that they believed to be 'rats' or

2  'snitches.' I am aware, based on my training and experience, that 'rats' and 'snitches' are

3  examples of coded language to describe individuals who provide information to law

4  enforcement against their co-conspirators, often in consideration for pending charges.

5  The 'rats' or 'snitches' are seen as detrimental and as a liability to the success of illegal

6  activities Norteño gang members complete. During the call, Jeffery Lewis asked in a

7  rhetorical fashion why Norteño gang members in the Vancouver area did not address the

8  issues with the 'rats' and "beat their ass." Additionally, the call captured Jeffery Lewis

9  directing **Edgar Munguia Del Rayo** to inform 'Swisher' (Martinell-Sterling) of the

10  status of the 'rats.'

11       31.    Based on my training and experience I also am aware that violent street

12  gangs abide by a code of conduct. Included in the code of conduct is the direction to not

13  cooperate with law enforcement in any capacity. Further, for those that do cooperate with

14  law enforcement or the government, the consequences often result in acts of violence by

15  Norteños against the violating members. It is my belief that Jeffery Lewis was calling

16  attention to these established codes of conduct requiring potential acts of violence on

17  individuals perceived to be cooperating with the government. Additionally, it is my

18  believe that Jeffery Lewis was sending a message to Nicholas Martinell-Sterling via

19  **Edgar Munguia Del Rayo** to not only be aware of these potential liabilities, but also to

20  remind them of established codes of conduct governing Norteño members.

21       32.    On December 23, 2022, I received information from agents with the Drug

22  Enforcement Administration (DEA) in Portland, Oregon pertaining to **TT-1**, as it was

23  observed on toll records of a phone number the DEA received in a separate investigation.

24  On December 23, 2022, **TT-1** was used to create a CashApp account with display name

25  'Edgar Munguia' and user name '$EDGAR360X4.' Based on my training and experience

26  I am aware that the number '14' is significant to Norteño culture, as the letter 'N' is the

27  fourteenth letter of the alphabet. I am also aware that Norteño gang members will utilize

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 10

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  'X' as the Roman numeral for 'ten' adjacent to a number '4' to represent the number '14'
2  as 'X4.' I am also aware that the local area code for the Clark County area is '360.' Based
3  on this information, I believe that the CashApp account '$EDGAR360X4' is attributable
4  to **Edgar Munguia Del Rayo**, a Norteño gang member in the part of Washington State
5  covered by the area code 360, specifically Vancouver.

6  *Substantial Narcotics Seizure by DEA in Portland, Oregon*

7  33.    On or about January 4, 2023, agents with the DEA Heroin Enforcement
8  Group in Portland, Oregon set up a 'buy-bust' operation in Portland, Oregon using a
9  Confidential Source (CS-1).[2] During a series of electronic communications done at the
10  direction of DEA agents, CS-1 coordinated and arranged the purchase of 20 pounds of
11  methamphetamine for $1,700 per pound.

12  34.    CS-1 has worked with the DEA since 2021 and provides information in
13  exchange for monetary consideration. CS-1 has provided the DEA with truthful and
14  reliable information recently, which has been independently corroborated through DEA
15  investigations. CS-1 has a criminal history that includes a felony conviction for
16  manufacturing/delivery of narcotics and possession of a controlled substance no
17  prescription (possession with intent / intent to deliver) in 2017. Additionally, CS-1's
18  information has assisted investigations with obtaining search warrants, the recording of
19  phone conversations and text messages, and other activities resulting in arrests of
20  investigative subjects.

21  35.    CS-1 contacted the methamphetamine supplier in a series of
22  communications confirming the buy location in an area of Portland, Oregon. During the
23  communications, the supplier stated the drugs would be arriving in a black Kia.
24  Investigators established surveillance units around the agreed upon meet location. Agents
25  met with CS-1 prior to the meeting and searched CS-1 for excess money (i.e., cash in

26

27  [2] The DEA's CS-1 is not the same individual referred to in this affidavit as CHS-1.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 11
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    addition to the buy money) and contraband, with negative results, and provided CS-1

2    with electronic monitoring equipment. Shortly thereafter CS-1 parked CS-1's vehicle at

3    the agreed upon meet location and informed the supplier of CS-1's arrival.

4          36.    Shortly after, surveillance agents saw a black Kia bearing Oregon license

5    plate 952NGH driving into the agreed upon meet location, and parking immediately to

6    the west of CS-1's vehicle. CS-1 walked over to the driver's window of the Kia and

7    began speaking with the driver, later identified as Jesus Alonso Ibarra Paez. CS-1 then

8    walked around to the rear passenger-side door and opened it. Shortly, thereafter, CS-1

9    began walking away from the Kia, and gave agents the pre-arranged arrest signal. CS-1

10   advised agents the suspected methamphetamine was in the backseat of the vehicle in both

11   a backpack and a trash bag.

12         37.    Agents contacted the black Kia and detained Jesus Alonso Ibarra Paez. An

13   Oregon City Police Department narcotics detection canine was deployed to conduct an

14   exterior sniff of the vehicle resulting in a positive alert to the presence of the odor of

15   narcotics. An interior sniff of the vehicle was conducted resulting in a positive alert.

16         38.    Agents with the DEA conducted a search of the vehicle and located a black

17   backpack which contained 18 clear, plastic bags of a clear crystal substance and two

18   clear, plastic bags of a clear crystal substance in a nearby black trash bag. The 20 bags

19   weighed approximately 9,895 gross grams of suspected methamphetamine, which has

20   been submitted to the DEA Western Laboratory in Pleasanton, California. Jesus Alonso

21   Ibarra Paez was arrested and booked on the narcotics violations in the District of Oregon.

22         39.    Agents with the DEA informed me that during the timeframe leading up to

23   and immediately following the 'buy-bust' operation the supplier was in frequent contact

24   with **TT-1.** Based on my training and experience, I am aware that individuals in the drug

25   trade often utilize relationships with trusted associates to ensure their successes. It is my

26   belief that the unidentified supplier and **Edgar Munguia Del Rayo**, the user of **TT-1**,

27   were engaging in communication related to the proposed narcotics transaction. It is

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 12
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  further my belief that **Edgar Munguia Del Rayo** continued to be contacted by the

2  supplier to check on the whereabouts of Jesus Alonso Ibarra Paez.

3       40.     On or about January 4, 2023, I observed open-source Facebook posts on

4  accounts associated with Nicholas Martinell-Sterling, Jared Dewayne Taylor, and others.

5  These photographs showed multiple Norteño gang members gathering on or around New

6  Year's Eve drinking alcohol in a vacant lot believed to be in the Fruit Valley

7  neighborhood of Vancouver, Washington. This is a neighborhood where Norteño graffiti

8  is often observed.

9       41.     Multiple Norteño gang members are in the photograph, including Nicholas

10  Martinell-Sterling, **Edgar Munguia Del Rayo**, Jared Dewayne Taylor, Austin Bell,

11  Gregory Brown, Jr., and others. **Edgar Munguia Del Rayo** was wearing a red baseball

12  cap, black and tan jacket, black pants, and white sneakers (making him the third person

13  from the left in the group photograph above). Nicholas Martinell-Sterling was wearing a

14  red baseball cap, black face mask, black top, black pants, and black sneakers (making

15  him the first person from the left in the row of people kneeling). Austin Bell was wearing

16  a black winter hat, a San Francisco 49ers football team varsity letterman style jacket with

17  red body and gold sleeves, black pants, and red sneakers (making him the second person

18  from the left in the row of people kneeling, next to Nicholas Martinell-Sterling). Gregory

19  Brown, Jr. was wearing a red and black checkered jacket, light blue jeans, and white

20  sneakers (making him the first person from the right in the row of people kneeling). Jared

21  Dewayne Taylor was wearing a red baseball cap, red hooded sweatshirt under a black and

22  grey jacket (making him the third person from the right in the back row of the

23  photograph). A second photograph showed a newer model black Chevrolet Impala

24  bearing a Lapin Motor Company dealer placard.

25       42.     In the morning hours of January 9, 2023, I conducted surveillance at 7700

26  NE 72nd Avenue in Vancouver. Apartment D204 faces south in the complex with carport

27  parking directly in front of the building. I observed a newer model black Chevrolet

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 13
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Impala facing south with the vehicle's trunk facing the D Building of the apartment

2  complex. The vehicle was running and appeared to be warming up due to the cold

3  weather. The vehicle had a Lapin Motor Company dealer placard affixed to the front of

4  the vehicle and appeared to be occupied by a Hispanic adult male. Based on my

5  knowledge and experience, I believe the operator and lone occupant of the vehicle was

6  **Edgar Munguia Del Rayo**.

7       43.     On January 9, 2023, Sprint records indicated that **TT-1** is subscribed to

8  Dana Jackson, at 3408 NE 98th Circle, Vancouver, Washington. I reviewed Clark County

9  records for the address and was unable to find anyone by the name Dana Jackson

10  associated with the address. I am aware, based on my training and experience, that

11  individuals involved in drug trafficking often provide false subscriber information to

12  avoid detection by law enforcement.

13       44.     On January 11, 2023, I again conducted surveillance at 7700 NE 72nd

14  Avenue in Vancouver. Again, I observed the same Chevrolet Impala parked facing south

15  in front of the D Building. The vehicle was unoccupied.

16       45.     On January 25, 2023, I presented the information above to the Honorable

17  Theresa L. Fricke, United States Magistrate Judge, in an affidavit requesting

18  authorization for search warrant and pen trap order for **TT-1**. Magistrate Judge Fricke

19  issued the warrant, and I served it on Sprint on January 26, 2023.

20                        ***Continued Use of Target Telephone - 1***

21       46.     Shortly after serving the previously mentioned warrant on the provider for

22  **TT-1**, I began receiving both geolocation data and pen register/trap and trace data (PRTT

23  data). The geolocation data had a large uncertainty radius (often larger than one mile), but

24  showed the device was primarily around The Woodlands Apartments, at 7700 NE 72nd

25  Avenue in Vancouver, WA. Between January 26 and February 7, 2023, investigators

26  utilized the geolocation data in furtherance of physical surveillance, primarily focusing

27  on the apartment complex. During these surveillance events the dark-colored Chevrolet

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 14
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Impala bearing dealer placards was consistently parked in front of the D Building where

2  **Edgar Munguia Del Rayo**'s apartment is located.

3          47.      On February 7, 2023, investigators observed **Edgar Munguia Del Rayo**

4  walking with the assistance of crutches along the driver's side of the Impala. Munguia

5  then entered the driver's door of the vehicle after placing the crutches in the rear

6  passenger compartment. He sat in the parked vehicle for a few minutes, eventually

7  exiting the parking space traveling east through the apartment complex. Both the front

8  and rear of the vehicle still had the dealer placard from Lapin Motor Company in

9  Portland, Oregon. **Edgar Munguia Del Rayo** drove north from the apartment complex

10  onto NE 72nd Avenue towards NE 78th Street, eventually turning westbound towards NE

11  Andresen Rd. I continued to monitor the geolocation data for **TT-1**, observing that the

12  movement of both **Edgar Munguia Del Rayo** and the Chevrolet Impala corresponded

13  with the movements of **TT-1** traveling through Vancouver, WA.

14          48.      On February 13, 2023, I requested call records from Washington State

15  Department of Corrections for any calls made to **TT-1** from inmates between the dates of

16  December 18, 2022, and February 13, 2023. I received the records on February 22, 2023,

17  identifying 24 calls made to **TT-1** in that timeframe. All the calls were made by inmate

18  Jeffery D. Lewis (aka "JD") and ranged in duration from a few minutes up to the

19  maximum call length of 20 minutes.

20          49.      One example was a call from Jeffery D. Lewis to **Edgar Munguia Del**

21  **Rayo** on **TT-1** on January 30, 2023. In the conversation, **Edgar Munguia Del Rayo**

22  described being in the Seattle metropolitan area for a doctor's appointment. The

23  geolocation data for **TT-1** corroborated that **Edgar Munguia Del Rayo** and **TT-1** were

24  in the Seattle, Washington, city limits at the time of the call. Based on my training and

25  experience, I believe that this shows **Edgar Munguia Del Rayo**'s continued control and

26  usage of **TT-1**. Further, it explains the observation of Del Rayo on crutches during the

27  February 7, 2023, surveillance event.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 15
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

50.     Another example took place on February 3, 2023. The parties discussed the January 30, 2023, doctor's appointment, and **Edgar Munguia Del Rayo**'s continued use of crutches. During the call to **TT-1** Lewis asked **Edgar Munguia Del Rayo** about a recent event where "something popped off." I am aware, based on my training and experience, that "something popped off" is a common phrase used to describe a significant event in the local gang or drug culture, such as a confrontation with an opposing force (i.e., a rival gang or law enforcement), an arrest or seizure of contraband by law enforcement, or the raising of an internal political issue within the Norteño gang structure. Lewis informed **Edgar Munguia Del Rayo** that he had reached out to both LNG shot-caller Nicholas Martinell-Sterling, whom Lewis referred to as "Swish," and LNG member Timothy Kinnunen (aka "Temper") for details. Neither Lewis nor **Edgar Munguia Del Rayo** provided any further details about the event during the call. Based on my training and experience, it is my belief that both parties have been trained enough to not explicitly detail potentially criminal activities or allegations concerning Norteño gang members over the recorded line to avoid or deter detection by law enforcement.

51.     Later in the February 3, 2023, conversation Lewis asked for "2 bills" from **Edgar Munguia Del Rayo** to get a "fool taken care of." I believe, based on my training and experience, that "2 bills" is coded language for $200 of United States currency to be put on Lewis's commissary by **Edgar Munguia Del Rayo**. I am also aware, based on my training and experience, that "fool" is coded language for a non-Norteño or rival gang member with whom a conflict exists, and to "take care of" is coded language for having a conflict resolved, oftentimes by a third party, through intimidation, violent act, or other illicit method. Neither Lewis nor **Edgar Munguia Del Rayo** expanded upon or provided specifics for the necessity of the $200, but I believe, based on the above information, that Lewis asked **Edgar Munguia Del Rayo** to put $200 on his commissary to be used as payment for the resolution of an unspecified conflict. As previously mentioned, I am aware that incarcerated individuals will intentionally avoid using specific or direct

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 16
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    language on recorded jail or prison telephone systems to thwart law enforcement when

2    discussing illicit activities. **Edgar Munguia Del Rayo** told Lewis that an individual

3    referred to as "the Homie" owed **Edgar Munguia Del Rayo** a total of $800, and that

4    $200 of that could be forwarded to Lewis's commissary account. **Edgar Munguia Del**

5    **Rayo** intimated that "the Homie" was not a Norteño gang member stating, "he's not a

6    Homie," indicating that the referenced individual is a friend or associate of sorts. I am

7    aware, based on my training, that Norteño gang members will use coded language to refer

8    to other Norteño gang members as "homies," and will occasionally extend the

9    designation to trusted or close associates who are not indoctrinated into the Norteño street

10    gang. It is my belief that this unidentified individual is a close enough associate to the

11    Norteño street gang to receive such a designation.

12        52.    On February 4, 2023, Lewis and **Edgar Munguia Del Rayo** spoke again

13    via **TT-1**. Again, the topic of the $200 was raised. Lewis sounded desperate to have the

14    funds transferred to him. Based on my training and experience, I am aware that

15    incarcerated individuals are often reliant on outside sources of assistance. These outside

16    sources are often associated gang members, significant others, family, or friends. In this

17    situation, if Lewis contracted or outsourced assistance from a third party who required

18    payment for services, and Lewis was unable to provide payment for these services, then

19    Lewis's credibility with the third party would be in jeopardy, and potentially his safety

20    would be at risk within the facility. Lewis asked **Edgar Munguia Del Rayo** to pick up

21    "the Homie" and take him to the bank to pull out the funds, and further asked **Edgar**

22    **Munguia Del Rayo** to task Nicholas Martinell-Sterling with inquiring about the funds.

23        53.    I am aware, based on my training and experience, that the Norteño street

24    gang operates in a hierarchical structure both in the prison facilities and in street

25    operations. Further, the street level operations receive direction from incarcerated

26    individuals, and in this instance inmates in designated positions of power within the

27    Washington State Penitentiary in Walla Walla, Washington provide direction to street

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 17
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  level Norteño gang members. Based on this awareness, I believe in this instance, Jeffery

2  D. Lewis, an incarcerated individual holding a position of power within the Washington

3  State Penitentiary, directed **Edgar Munguia Del Rayo** to request assistance from

4  Nicholas Martinell-Sterling, the designated shot-caller for LNG in Clark County,

5  Washington, to resolve the issue of getting commissary funds appropriately routed.

6      54.     The February 4, 2023, call continued with Lewis and **Edgar Munguia Del**

7  **Rayo** discussing Norteño gang politics. Both parties discussed an ongoing issue

8  involving a Norteño gang member referred only by the moniker 'Rowdy.' Based on the

9  context of the call, Rowdy is a 'VC' on "freeze." I am aware, based on my training and

10  experience, that 'VC' is an abbreviation for Oregon-based Norteño set 'Varrio Catorce,'

11  or Neighborhood 14. I am aware, based on my training and experience, that the number

12  14 is significant to the Norteño street gang, as previously explained. I am also aware,

13  based on my training and experience, that "freeze" is coded language within the Norteño

14  gang to describe an individual under review for a transgression against the Norteño code

15  of conduct or established guidelines. According to **Edgar Munguia Del Rayo**, VC

16  leadership did not want to hear about the issues concerning Rowdy. **Edgar Munguia Del**

17  **Rayo** went on to describe VC's program being out of the norm from other Norteño gang

18  sets. I am aware, based on my training and experience, that each set is responsible for

19  ensuring it conforms to an established set of guidelines, or program. Any deviation from

20  the standard program is odd and easily noticed. Lewis inquired if **Edgar Munguia Del**

21  **Rayo** told the 'Big Homie' to get help resolving this issue.

22      55.     I believe the 'Big Homie' is Jose Arredondo, who also goes by the moniker

23  'Big Cuyi.' In December 2022, Washington State Department of Corrections

24  investigators provided a review of a phone call made by Pablo Castellon (aka 'Sapo'),

25  housed at the Washington State Penitentiary, to Jose Arredondo, who currently lives in

26  Yakima, Washington. Investigators have identified Arredondo as a Yakima- based

27  Norteño gang member who receives direction from La Nuestra Familia gang members in

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 18
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   Bureau of Prisons facilities. I am aware, based on my training and experience, that
2   Norteño gang members involved in street & prison hierarchies ultimately receive
3   direction from La Nuestra Familia. During the call, Castellon directed Arredondo to call
4   **360-281-3526 (TT-1)** to assist in resolving an ongoing issue. Based on this information, I
5   believe that **Edgar Munguia Del Rayo** (the user of **TT-1**) was put in touch with Jose
6   Arredondo for help resolving a Norteño gang issue at the benefit of both the Norteño
7   street gang and La Nuestra Familia. Further, I believe that Arredondo is 'the big Homie'
8   Lewis referenced in the call with **Edgar Munguia Del Rayo**.

9       56.     On February 5, 2023, another phone call took place between Jeffery D.
10  Lewis and **Edgar Munguia Del Rayo**, using **TT-1**. The parties again talked about the
11  $200, with no significant update from either party. The conversation then turned to
12  discussing photographs sent to Jeffery D. Lewis via prison communication systems that
13  include many of the LNG set members together in a vacant lot. Lewis asked **Edgar**
14  **Munguia Del Rayo** to describe where in Vancouver the photos were taken, and Munguia
15  Del Rayo provided a vague description of the Fruit Valley neighborhood in Vancouver.
16  **Edgar Munguia Del Rayo** further described the location as a place where various
17  Norteño gang members from different sets get together to "kick it" and meet up.

18      57.     I am aware, based on my training and experience, that those involved in
19  collaborative illicit activities will gather to conduct meetings. These meetings will often
20  involve the delivery of new information received from other co-conspirators in leadership
21  roles to provide direction for the organization. Additionally, I am aware that these
22  meetings are often held in areas that are easy to conduct counter-surveillance and avoid
23  detection by law enforcement. These locations are often in territories or areas controlled
24  by the organization, in this instance the Norteño street gang. I am also aware that the
25  Fruit Valley neighborhood has a historical significance to Norteño street gang members
26  in the Vancouver, WA area with many Norteño gang members and associates living in
27  the area.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 19
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

58.    On March 9, 2023, I again requested authorization for a search warrant and PRTT order for **TT-1**. Magistrate Judge Fricke issued the warrant, and I served it on Sprint on March 10, 2023.

### *Additional Use of Target Telephone 1*

59.    **Edgar Munguia Del Rayo** has continued to use **TT-1** to coordinate Norteño street gang activities in Southwest Washington following the arrests of Nicholas Martinell-Sterling and Austin Bell for a drive-by homicide and their continued custody at Clark County Jail. Many calls have been made on recorded telephone lines from Clark County Jail and the Washington State Penitentiary. Specifically, calls made to **Edgar Munguia Del Rayo** on **TT-1** are utilized to relay messages between Nicholas Martinell-Sterling and Austin Bell within the Clark County Jail, as well as to Jeffery D. Lewis at the Washington State Penitentiary.

60.    Based on my training and experience, I am aware that incarcerated individuals will utilize third parties to relay messages from other known associates or co-conspirators. Specifically, Nicholas Martinell-Sterling instructed **Edgar Munguia Del Rayo** to direct Austin Bell to request to be moved within the jail to a unit adjacent to Nicholas Martinell-Sterling. I am also aware, based on my training and experience, that Norteño street gang members, as well as other violent street gang members, will attempt to get individuals belonging to their same gang or set to be housed in the same area in prison or jail facilities. The reason for doing so is to ensure safety of the group, in this case the Norteño street gang, from attack or targeting by rival street gangs.

61.    On April 8, 2023, Nicholas Martinell-Sterling made a series of phone calls to **TT-1** on the recorded jail line. During one of the calls Nicholas Martinell-Sterling informed **Edgar Munguia Del Rayo** that "Risky got locked up." Based on my training and experience, I believe that Nicholas Martinell-Sterling was telling **Edgar Munguia Del Rayo** about the arrest of Gregory Brown, Jr. in Longview, Washington. In a later call

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 20
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

on April 8, Nicholas Martinell-Sterling stated that "Risky got a UPF," consistent with Brown, Jr.'s arrest.

62.     On April 9, 2023, Nicholas Martinell-Sterling made a phone call to **TT-1** on the recorded jail line. During the call both parties quickly discussed whether Gregory Brown, Jr. would be bailing out of Cowlitz County Jail. Both parties discuss a Norteño street gang member identified by the moniker 'Lil Savage.' I have consulted with other investigators, specifically the Longview Street Crimes Unit, to identify this individual as Kamrin Kerr, born in 2004, who is a Norteño street gang member for the RDL set. **Edgar Munguia Del Rayo** told Martinell-Sterling that he had spoken to Kamrin Kerr between the time of Brown, Jr.'s arrest and the current phone call (which occurred within 36 hours of Gregory Brown, Jr.'s arrest).

63.     On April 20, 2023, I again requested authorization for a search warrant and PRTT order for **TT-1**. Magistrate Judge Fricke issued the warrant, and I served it on Sprint on April 20, 2023.

### *Surveillance of Edgar Munguia Del Rayo – April 20, 2023*

64.     On April 20, 2023, agents conducted physical surveillance at The Woodlands Apartments, 7700 NE 72nd Avenue, Apt D204 in Vancouver, WA, registered and known address of **Edgar Munguia Del Rayo**. This surveillance was aided by **TT-1**'s geolocation data and a mounted surveillance camera in the area.

65.     At 12:50pm agents saw a black Chevrolet Impala bearing Washington license plate CGA5736 (Vehicle 1 or V-1) in front of the apartment. This vehicle is registered to **Edgar Munguia Del Rayo**'s girlfriend and has been observed at the apartment throughout the investigation.

66.     At 1:50pm V-1 drove east through the parking lot towards NE 72nd Avenue. At the apartment complex entrance V-1 turned south towards NE 63rd Street. I was able to confirm and observe that **Edgar Munguia Del Rayo** was the driver of the vehicle. Surveillance units followed V-1 to NE 63rd Street, where V-1 turned westbound towards

1  NE Andresen Road coming to a stop at a red light positioned to turn south on NE
2  Andresen Road. At the change of the light V-1 and surveillance units continued south on
3  NE Andresen Road towards NE Van Mall Drive. V-1 was traveling approximately 15
4  miles over the posted speed limit making frequent lane changes. As V-1 approached NE
5  Van Mall Drive the traffic light was changing from green to red. After the light changed
6  to red, V-1 continued through the light without slowing down. Surveillance units were
7  unable to maintain visual contact with V-1.

8      67.     I reviewed the geolocation data of **TT-1** and was able to confirm that **TT-1**
9  was traveling with V-1. Surveillance units attempted to utilize the geolocation and cell-
10  site data for **TT-1** to reacquire V-1 and **Edgar Munguia Del Rayo** without success.

11                   ***Continued Use of Target Telephone - 1***

12     68.     From April 21 through May 30, 2023, **Edgar Munguia Del Rayo** and **TT-**
13  **1** have been involved in over 30 recorded jail phone calls involving Austin Bell, Nicholas
14  Martinell-Sterling, and others. During these calls **Edgar Munguia Del Rayo** discussed
15  Norteño gang members and activities.

16     69.     On April 25, 2023, Austin Bell placed an outgoing call from the Clark
17  County Jail to **Edgar Munguia Del Rayo** at **TT-1**. During the call Austin Bell stated
18  there was a "D.O." in Bell's housing unit within the jail. Based on my training and
19  experience, I am aware that a 'D.O.' is coded language for an individual who voluntarily
20  leaves, or 'drops out', from the gang. Dropouts are not looked upon favorably in the
21  Norteño street gang culture, and Norteño gang members are directed to confront
22  dropouts. In response to this information **Edgar Munguia Del Rayo** stated, "You already
23  know what to do, handle that fool." Based on my training and experience, I believe this is
24  an example of **Edgar Munguia Del Rayo** directing or providing direction to Austin Bell
25  to commit an act of violence in furtherance of the Norteño street gang.

26     70.     During the call **Edgar Munguia Del Rayo** also stated that he received a
27  message from 'Josie' and a CashApp transfer to put money on Austin Bell's phone or

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 22
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  commissary at the Clark County Jail. Further, **Edgar Munguia Del Rayo** stated that he
2  was told the money was from 'Swish.' Based on my knowledge, I believe 'Swish' is
3  Nicholas Martinell-Sterling, aka Swisher, and 'Josie' is Josie Silvis, Martinell-Sterling's
4  girlfriend. I believe this was Nicholas Martinell-Sterling authorizing the distribution of
5  funds to Austin Bell through Josie Silvis and **Edgar Munguia Del Rayo**. I reviewed the
6  PRTT data during this time frame and confirmed that **TT-1** received a notification from a
7  number associated with CashApp.

8       71.     The parties had a second call on April 25 to follow up on the dropout issue.
9  Austin Bell stated that he attempted to confront the other inmate, as previously directed
10 by **Edgar Munguia Del Rayo**. The interaction appeared to be primarily verbal, however
11 as a result the other inmate requested placement in protective custody. Based on my
12 training and experience, I believe this is an example of Norteño street gang directives to
13 intimidate other incarcerated individuals to establish and control jail and prison
14 populations. I also believe this is an example of **Edgar Munguia Del Rayo**'s influence
15 on the Norteño street gang members and their activities.

16      72.     On May 16, 2023, Austin Bell placed an outgoing call from the Clark
17 County Jail to **Edgar Munguia Del Rayo** at **TT-1**. At the initiation of the call Austin
18 Bell informed **Edgar Munguia Del Rayo** that he had gotten 'the Aztec and 1-4 on my
19 face.' Based on my training and experience, I am aware that tattoos hold a special
20 meaning within the Norteño street gang. I am also aware of Norteño street gang claiming
21 affiliation with Aztec culture and imagery that is often represented through tattoos. I
22 believe that Austin Bell told **Edgar Munguia Del Rayo** that he got specific Norteño
23 street gang tattoos on his face to show his dedication to the gang.

24      73.     Austin Bell went on to say that 'Charley' was due to leave the Clark
25 County Jail, and upon his transfer or release 'the keys' would transfer to Austin Bell.
26 Based on my training and experience, I am aware that 'the keys' is coded language
27 representing leadership within a jail or prison facility within Norteño street gang culture.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 23
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    Additionally, Austin Bell spoke vaguely about requiring approvals or concurrence to

2    have his current case handled in a similar fashion as Charley's. **Edgar Munguia Del**

3    **Rayo** stated that he would reach out to 'the Homey' to get the concurrence. Based on my

4    training and experience, I am aware that Norteño street gang members require approvals

5    to engage in certain activities. I believe that Austin Bell asked **Edgar Munguia Del**

6    **Rayo** to get the concurrence, and I also believe that 'the Homey' is likely Jose

7    Arredondo, aka Big Cuyi.

8         74.    Later in the call Austin Bell asked **Edgar Munguia Del Rayo** what he

9    thought about Austin Bell getting "the SK for the Sacramento Kings" on his chest. **Edgar**

10   **Munguia Del Rayo** responded affirmatively after laughing stating, "the best team there

11   is." Austin Bell also stated that he wants to get "the Nebraska" on his shoulder. Based on

12   my training and experience, Austin Bell and **Edgar Munguia Del Rayo** are speaking in

13   coded language to avoid direct correlation to the Norteño street gang and are not

14   referencing their mutual appreciation for the professional basketball team located in

15   Sacramento, California. 'SK' is coded language within the Norteño street gang for 'Skrap

16   Killer.' 'Skrap' is coded language for a Sureño street gang member. I am also aware that

17   Norteño street gang members also wear University of Nebraska Cornhuskers clothing

18   since the logo is a large red 'N'. In the Norteño street gang culture the red 'N' represents

19   Norteño and is used in various imagery or tattoos for members. Based on this knowledge,

20   I believe that Austin Bell and **Edgar Munguia Del Rayo** were discussing Austin Bell

21   getting tattoos to further his commitment to the Norteño street gang. I also believe that

22   **Edgar Munguia Del Rayo** will get the concurrence for Austin Bell to get these tattoos,

23   and that this concurrence will come from Jose Arredondo.

24             ***Additional Surveillance on Edgar Munguia Del Rayo and TT-1***

25        75.    On April 26, 2023, agents conducted physical surveillance of **Edgar**

26   **Munguia Del Rayo**, assisted by geo-location data from **TT-1**. At 11:40am, V-1

27   (unoccupied) was parked facing north in front of ATI Physical Therapy at 512 NE 81st

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 24
USAO # 2022R01041

1   Street in Vancouver, WA. The geolocation data for **TT-1** showed it was consistent with

2   the location of V-1. At 11:46am, **Edgar Munguia Del Rayo** exited the business and

3   walked towards the vehicle with the keys in his hand. He opened the driver's door and

4   entered the vehicle, and shortly thereafter, began driving through the parking lot towards

5   NE Hazel Dell Avenue. Surveillance continued to follow **Edgar Munguia Del Rayo** as

6   he traveled to NE 78th Street eventually accessing Interstate-5 southbound. V-1 began

7   traveling at higher rates of speed and was observed making quick and erratic lane

8   changes. Based on my training and experience, individuals involved in drug trafficking or

9   criminal acts will often utilize surveillance detection techniques when driving. These

10   techniques include driving at higher rates of speed which may identify surveillance

11   vehicles driving at similar or higher speeds to maintain contact. Other examples of these

12   techniques include taking circuitous routes rather than taking a direct route to a

13   destination. Based on this knowledge, as well as the observations on April 20, 2023, I

14   believe that **Edgar Munguia Del Rayo** was utilizing these techniques to thwart

15   surveillance efforts.

16         76.     On May 16, 2023, the FBI Special Operations Group conducted

17   surveillance on **Edgar Munguia Del Rayo** and **TT-1**. At the initiation of the surveillance

18   V-1 was observed parked in front of his apartment. The surveillance was initiated after

19   **Edgar Munguia Del Rayo** received recorded jail phone calls on **TT-1** from Austin Bell

20   and Nicholas Martinell-Sterling.

21         77.     At approximately 4:32pm V-1 left the apartment and went to La Bonita

22   restaurant located at 2710 N Killingsworth Street in Portland, Oregon. V-1 was parked in

23   front of the restaurant at approximately 4:52pm and left at 5:01pm. Surveillance units

24   were unable to observe anyone entering or exiting the vehicle during this 9-minute stay

25   due to traffic and parking conditions. V-1 traveled back into Vancouver. At

26   approximately 6:08pm V-1 was parked curbside in front of 9002 and 9006 NE 15th

27   Avenue. I am aware that Carlos Salinas, aka Salas, resides at 8917 NE 15th Avenue, Apt

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 25
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

23. At 6:12pm, V-1 left the area of Carlos Salinas' apartment and returned to **Del Rayo's** apartment. Based on this information, I believe that **Edgar Munguia Del Rayo** left his residence to travel to a restaurant in Portland, Oregon for approximately ten minutes, then traveled in rush hour traffic to meet with Carlos Salinas for an unknown reason for another very short time. I am aware that those involved in drug trafficking will often travel between locations stopping for short durations to collect, distribute, and transport narcotics or illicit proceeds between co-conspirators. It should be noted that during the surveillance on May 16, 2023, **Edgar Munguia Del Rayo** was not observed carrying items that could be perceived as food deliveries. Based on this information, I believe that **Edgar Munguia Del Rayo** was likely engaging in some form of narcotics trafficking during this period. It should also be noted that the geolocation data for **TT-1** continued to travel consistently with V-1's location.

78.    I believe, based on my training and experience, that **Edgar Munguia Del Rayo**'s mobility has increased, but is still limited due to his ongoing injuries. Due to his injuries, **Edgar Munguia Del Rayo** is at a higher risk of being contacted by local law enforcement if involved in criminal activity simply because of his inability to flee on foot or quickly access a vehicle. This would potentially put the Norteño gang activities at risk, and I believe this is a conscious effort by **Edgar Munguia Del Rayo** to avoid implicating the organization. As **Edgar Munguia Del Rayo** continues to heal during the upcoming 45-day period requested by this warrant, I believe he will be more likely to meet with other Norteño gang members and that the geolocation data for **TT-1** to be provided through the requested warrant will assist in the ongoing investigation.

79.    Investigators have found the collection of PRTT data for **TT-1**, in tandem with the recorded telephone calls of Jeffery D. Lewis, Nicholas Martinell-Sterling, and Austin Bell, beneficial. Investigators have utilized the data to identify Edgar Munguia Del Rayo's frequent contacts, CashApp accounts attributed to these contacts, discovery

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 26
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   of financial reporting linked to the contacts, and other social media accounts linked to

2   these contacts.

3        80.    Investigators have identified CashApp as a method used by Norteño gang

4   members to launder illicit drug proceeds and "pay taxes" to La Nuestra Familia.

5   Information received from Bureau of Prisons – National Gang Unit assisting in this

6   investigation is that Norteño gang sets are required to pay 25% of all illicit proceeds to La

7   Nuestra Familia. Street level Norteño gang members also use CashApp while distributing

8   narcotics to thwart law enforcement efforts; when observed during short contact with

9   individuals exchanging narcotics, often referred to as a 'hand-to-hand,' the Norteño drug

10  dealer does not receive any physical United States currency from the customer. If law

11  enforcement contacts the dealer, there will be no physical evidence (in the form of cash)

12  to indicate a transaction took place.

13       81.    The PRTT data for **TT-1** has also led to the discovery of financial reporting

14  for money remittances sent by **Edgar Munguia Del Rayo**'s top contacts. Multiple

15  contacts are sending money remittances from Vancouver, Washington to California and

16  multiple areas in Mexico. I am aware, based on my training and experience, that use of

17  money remitters is a common method for money laundering. Often, drug dealers task

18  unwitting third parties, or presumably unaffiliated individuals, to send the illicit proceeds.

19  These individuals are often compensated for their efforts, and the drug dealer is distanced

20  from the sending of the illicit proceeds. It is my belief that **Edgar Munguia Del Rayo**

21  has tasked presumably unaffiliated individuals to send illicit proceeds to individuals in

22  California and Mexico in furtherance of Norteño gang drug trafficking activities.

23       82.    Given the above facts, I believe there is probable cause to believe that

24  **Edgar Munguia Del Rayo** is using **TT-1** for drug and gang-related purposes and will

25  continue to use **TT-1** for the same purposes. Based on my training and experience, I am

26  aware that drug trafficking is not a singular offense and will be conducted repeatedly to

27  gather illicit proceeds. Additionally, I believe **TT-1** will be utilized in furtherance of

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 27
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    Norteño street gang activity within the Western District of Washington and elsewhere. I

2    further believe that the geolocation and PRTT data from **TT-1** will contain information

3    related to **Edgar Munguia Del Rayo**'s drug trafficking activities in Western Washington

4    and elsewhere. Based on the criminal investigation discussed herein, these records are

5    likely to constitute relevant and material information related to the ongoing racketeering

6    conspiracy of the Norteño street gang and the RDL and LNG sets, in violation of 18

7    U.S.C. § 1962.

8                    **INFORMATION ON CELLULAR DEVICES**

9         83.    The location information requested in this affidavit is useful in drug

10    trafficking investigations as the information can be used to: (1) aid surveillance during

11    suspected drug deals; (2) help locate and identify target residences, stash houses, and

12    other storage locations; (3) help identify where known and unknown conspirators live and

13    the vehicles they drive; (4) help identify sources of supply, customers, and other

14    unknown conspirators who assist in the distribution of narcotics and/or help launder the

15    cash drug proceeds; (5) help understand the geographic breadth of the organization and

16    how and where conspiracies operate; and (6) help identify transportation sources used by

17    the conspirators.

18         84.    Based on my training and experience, I know each cellular device has one

19    or more unique identifiers embedded inside it. Depending on the cellular network and the

20    device, the embedded unique identifiers for a cellular device could take several different

21    forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity

22    Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity

23    Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number

24    ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International

25    Mobile Equipment Identity ("IMEI"). The unique identifiers -- as transmitted from a

26    cellular device to a cellular antenna or tower -- can be recorded by pen-traps and indicate

27

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 28
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 the identity of the cellular device making the communication without revealing the

2 communication's content.

3       85.     Based on my training and experience, I know that when a cell phone

4 connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the

5 cellular antenna or tower, and the cellular antenna or tower records those identifiers as a

6 matter of course. The unique identifiers -- as transmitted from a cell phone to a cellular

7 antenna or tower -- are like the telephone number of an incoming call. They can be

8 recorded by pen-trap devices and indicate the identity of the cell phone device making the

9 communication without revealing the communication's content. In addition, a list of

10 incoming and outgoing telephone numbers is generated when a cell phone is used to

11 make or receive calls, or to send or receive text messages (which may include

12 photographs, videos, and other data). These telephone numbers can be recorded by pen-

13 trap devices and then used to identify the parties to a communication without revealing

14 the communication's contents.

15       86.     Based on my training and experience, I know that a cell phone can also be

16 used to exchange text messages with email accounts. The email addresses associated with

17 those text messages can be recorded by pen-trap devices and then used to identify parties

18 to a communication without revealing the communication's contents.

19       87.     Based on my training and experience, I know that cellular phones can

20 connect to the internet via a cellular network. When connecting through a cellular

21 network, internet communications sent and received by the cellular phone each contain

22 the same unique identifier that identifies cellular voice communications, such as an ESN,

23 MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet communications from a cellular

24 phone also contain the IP address associated with that cellular phone at the time of the

25 communication. Each of these unique identifiers can be used to identify parties to a

26 communication without revealing the communication's contents.

27

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 29
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

88.     In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the public. I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

89.     Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Telephone, including by initiating a signal to determine the location of the Target Telephone on Sprint's network or with such other reference points as may be reasonably available

90.     When using a cellular connection to receive or transmit data, a cellular phone typically utilizes a cell tower to make telephone calls, send or receive text messages, send or receive emails, surf the internet, carry out application-initiated data transfers, among other things.

91.     Based on my training and experience, I know that Sprint can collect cell-site data about the Target Telephone. Based on my training and experience, I know that for each communication (including data connections) a cellular device makes, its wireless

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  service provider can typically determine: (1) the date and time of the communication; (2)

2  the telephone numbers involved, if any; (3) the cell tower to which the customer

3  connected at the beginning of the communication; (4) the cell tower to which the

4  customer connected at the end of the communication; and (5) the duration of the

5  communication. I also know that wireless providers such as Sprint typically collect and

6  retain cell-site data pertaining to cellular devices to which they provide service in their

7  normal course of business to use this information for various business-related purposes.

8      92.    Different service providers use different systems, applications, and reports

9  to collect or analyze cell site data. These systems, applications, and reports are referred to

10  by a variety of names including, but not limited to real-time tool or "RTT" (Verizon),

11  Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD"

12  (Sprint), Location Database of Record or "LOCDBOR" (AT&T), EVDO, ALULTE,

13  Timing Advance and True Call (T-Mobile/Sprint/US Cellular/GCI). RTT data, for

14  example, estimates the approximate distance of the cellular device from a cellular tower

15  based upon the speed with which signals travel between the device and the tower. This

16  information can be used to estimate an approximate location range that is more precise

17  than typical cell-site data.

18      93.    Based on my training and experience, I know that wireless providers such

19  as Sprint typically collect and retain information about their subscribers in their normal

20  course of business. This information can include basic personal information about the

21  subscriber, such as name and address, and the method(s) of payment (such as credit card

22  account number) provided by the subscriber to pay for wireless communication service. I

23  also know that wireless providers such as Sprint typically collect and retain information

24  about their subscribers' use of the wireless service, such as records about calls or other

25  communications sent or received by a particular device and other transactional records, in

26  their normal course of business. In my training and experience, this information may

27  constitute evidence of the crimes under investigation because the information can be used

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 31
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    to identify the Target Telephone's user or users and may assist in the identification of co-
2    conspirators and/or victims.
3        94.    Modern cell phones allow users to switch their telephone numbers, use
4    multiple telephone numbers on a single device, and transfer their telephone number to a
5    different cell phone.  These changes can be made with the assistance of the wireless
6    provider or by taking actions such as changing the "SIM card" (short for "subscriber
7    identity module card") of a cellphone.  To provide for any such changes made to the
8    Target Telephone, Attachment A specifies that the property to be searched includes:
9    (i) any instrument to which the listed target telephone number was assigned within the
10   last 30 days, and that now has been assigned a changed telephone number, (ii) any
11   changed telephone number assigned to an instrument now bearing the same unique
12   identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number
13   listed above, or that was bearing the same unique identifying number as the telephone
14   number listed above, at any point within the last 30 days, (iii) any changed unique
15   identifying number subsequently assigned to the same telephone number, or (iv) any
16   additional changed telephone number and/or unique identifying number, whether the
17   changes occur consecutively or simultaneously, listed to the same subscriber and wireless
18   telephone account number as the telephone numbers listed above, within the period of
19   disclosure authorized by this warrant.

## AUTHORIZATION REQUEST

20
21       95.    Based on the foregoing, I request that the Court issue the proposed search
22   warrant and pen-trap order, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C.
23   § 2703(c), and 18 U.S.C. § 3123.
24       96.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of
25   Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to
26   delay notice to the subscriber or user of the Target Telephone until 90 days after the
27   collection authorized by the warrant has been completed. There is reasonable cause to

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 32
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  believe that providing immediate notification of the warrant may have an adverse result,

2  as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of

3  the Target Telephone would seriously jeopardize the ongoing investigation, as such a

4  disclosure would give that person an opportunity to destroy evidence, change patterns of

5  behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As

6  further specified in Attachment B, which is incorporated into the warrant, the proposed

7  search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. §

8  3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or

9  electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or

10  electronic information, there is reasonable necessity for the seizure for the reasons set

11  forth above. *See* 18 U.S.C. § 3103a(b)(2).

12      97.    I further request that the Court direct Sprint to disclose to the government

13  any information described in Attachment B that is within the possession, custody, or

14  control of Sprint. I also request that the Court direct Sprint to furnish the government all

15  information, facilities, and technical assistance necessary to accomplish the collection of

16  the information described in Attachment B unobtrusively and with a minimum of

17  interference with Sprint's services, including by initiating a signal to determine the

18  location of the Target Telephone on Sprint's network or with such other reference points

19  as may be reasonably available, and at such intervals and times directed by the

20  government. The agency shall reasonably compensate Sprint for reasonable expenses

21  incurred in furnishing such facilities or assistance.

22      98.    Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant

23  by serving the warrant on Sprint. Because the warrant will be served on Sprint, who will

24  then compile the requested records and data, reasonable cause exists to permit the

25  execution of the requested warrant at any time in the day or night. I therefore request that

26  the Court authorize execution of the warrant at any time of day or night, owing to the

27  potential need to locate the Target Telephone outside of daytime hours.

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 33
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1      99.    This is the fourth request in this judicial district for a warrant and PRTT

2   order with respect to **TT-1** as a part of this investigation.

3      100.   As noted above, I am assigned to the FBI's Vancouver, Washington, office.

4   Thus, I am submitting this affidavit and application electronically in accordance with

5   Local Criminal Rule 41(d)(3).

6

7                                      SEAN THORNTON, Affiant

8                                      Special Agent
                                       FBI

9

10      The above-named agent provided a sworn statement to the truth of the foregoing

11   affidavit by telephone on the 2nd day of June 2023.

12

13

14                                     DAVID W. CHRISTEL
                                       United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

AFFIDAVIT OF SPECIAL AGENT Sean Thornton - 34          UNITED STATES ATTORNEY
USAO # 2022R01041                                      1201 PACIFIC AVE., SUITE 700
                                                       TACOMA, WASHINGTON 98402
                                                       (253) 428-3800

**EXHIBIT 1**

DECLARATION

I, Marci L. Ellsworth, declare as follows:

1.      I am a duly appointed Assistant United States Attorney for the Western District of Washington, and I have primary responsibility for representing the interests of the United States herein.

2.      I make this declaration in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.

3.      Pursuant to 18 U.S.C. § 3122(b), I certify that the FBI is the law enforcement agency conducting the investigation in this matter and that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by that agency.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Application is made on the basis of information officially furnished, and on that basis I verily believe such information to be true.

Executed this 2nd day of June 2023.


*s/ Marci L. Ellsworth*
MARCI L. ELLSWORTH
Assistant United States Attorney

Exhibit 1 - Declaration -- PAGE 1
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# ATTACHMENT A

## Property to Be Searched and Subscriber/Subject Information

1.     Records and information associated with the cellular phone assigned call number 360-281-3526, with listed subscriber Dana Jackson (the "Target Telephone") and International Mobile Subscriber Identity (IMSI) number 310260557676952, that are in the custody or control of Sprint, a company headquartered at 6360 Sprint Parkway, Overland Park, Kansas 66251. The subscriber of the Target Telephone is Dana Jackson. The identity of the person who is the subject of the criminal investigation and believed to be using the Target Telephone is **Edgar Munguia Del Rayo**.

2.     The Target Telephone.

3.     The property to be searched includes: (i) any instrument to which the listed Target Telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant

Attachment A -- PAGE 1
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data, and prospective E-911/GPS and cell site triangulation information regarding the Target Telephone. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

**I.    Section I:  Information to be Disclosed by Sprint**

1.    **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A:

a.    Names (including subscriber names, user names, and screen names);

b.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.    Local and long distance telephone connection records for the past 60 days;

d.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions for the past 60 days;

e.    Length of service (including start date) and types of service utilized;

f.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"),

Attachment B -- PAGE 1
USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

2    Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers

3    ("IMSI"), or International Mobile Equipment Identities ("IMEI");

4              g.      Other subscriber numbers or identities (including the registration

5    Internet Protocol ("IP") address); and

6              h.      Means and source of payment for such service (including any credit

7    card or bank account number) and billing records.

8       2.     **Pen Register/ Trap and Trace Data and Associated Subscriber Records**

9    **to Be Provided for a Period of 45 Days.**

10              a.      Sprint shall install and monitor pen-trap devices to record, decode,

11    and/or capture dialing, routing, addressing, and signaling information associated with

12    each communication to or from the Target Telephone including the date, time, and

13    duration of the communication, and the following, without geographic limit and without

14    notice to the subscriber:

15                (i)      IP addresses associated with the cell phone device or devices

16                       used to send or receive electronic communications;

17                (ii)     Any unique identifiers associated with the cell phone device or

18                       devices used to make and receive calls with the cell phone

19                       number described in Attachment A, or to send or receive other

20                       electronic communications, including the ESN, MEIN, IMSI,

21                       IMEI, SIM, MSISDN, or MIN;

22               (iii)    IP addresses of any websites or other servers to which the cell

23                       phone device or devices connected; and

24               (iv)    Source and destination telephone numbers and email

25                       addresses.

26

27

Attachment B -- PAGE 2

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1         b.     On a 24-hour-a-day basis, for the duration of the authorized pen-trap

2 devices, Sprint shall provide the following records for those subscribers whose identifiers

3 are obtained pursuant to the use of the pen-trap devices: published or non-published

4 subscriber names and addresses, including billing addresses.

5         3.     **Historical Cell Site Location Information.**

6         a.     All records and other information (**<u>not</u> including the contents of**

7 **communications**) relating to wire and electronic communications sent or received by the

8 Account from December 1, 2022, to the date of this warrant, including:

9            i.     the date and time of the communication, the method of the

10 communication, and the source and destination of the communication (such as the source

11 and destination telephone numbers (call detail records), email addresses, and IP

12 addresses); and

13            ii.     historical cell site information regarding the cell tower and

14 antenna face (also known as "sectors") through which the communications were sent and

15 received. This information is to be provided irrespective of the application, name, or

16 report utilized by Sprint. Accordingly, this information includes the following data sets to

17 the extent that they are collected by Sprint: RTT, PLU, PCMD, LOCDBOR, EVDO, True

18 Call, ALULTE, and Timing Advance.

19         b.     The physical address and coverage maps of cell towers used by the

20 Target Telephone.

21         4.     **Prospective Cell Site Location Information.**

22         a.     All information about the location of the Target Telephone described

23 in Attachment A for **a period of 45 days**, during all times of day and night. This

24 information includes: precise location information, as well as all data about which "cell

25 towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces

26 of the towers) received a radio signal from the cellular telephone(s) or account(s)

27

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  described in Attachment A. This information also includes the following data sets to the

2  extent that they are collected by Sprint: RTT, PLU, PCMD, LOCDBOR, EVDO, True

3  Call, ALULTE, and Timing Advance.

4         b.    The physical address and coverage maps of cell towers used by the

5  Target Telephone.

6        5.    **Prospective E-911/GPS and Cell Site Triangulation Information.**

7         a.    All information about the location of the Target Telephone described

8  in Attachment A for **a period of 45 days**, during all times of day and night. This

9  information includes: all available E-911 Phase II data, GPS data, latitude-longitude data,

10  and other precise location information, as well as all data about which "cell towers" (i.e.,

11  antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the

12  towers) received a radio signal from the cellular telephone(s) or account(s) described in

13  Attachment A.

14        b.    The physical address and coverage maps of cell towers used by the

15  Target Telephone.

16        To the extent that the location information described in the previous paragraphs

17  (hereinafter, "Location Information") is within the possession, custody, or control of

18  Sprint, Sprint is required to disclose the Location Information to the government pursuant

19  to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), Sprint

20  must furnish the government all information, facilities, and technical assistance necessary

21  to accomplish the collection of the Location Information unobtrusively and with a

22  minimum of interference with Sprint's services. The government shall compensate Sprint

23  for reasonable expenses incurred in furnishing such facilities or assistance.

24  **II.**    **Section II: Information to Be Seized by the Government**

25        1.    All information described above in Section I that constitutes evidence of

26  violations of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 1962 involving **Edgar**

27

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  **Munguia Del Rayo (aka Fatboy), Nicholas Martinell-Sterling (aka Swisher), Jared**

2  **Dewayne Taylor (aka Privilege), Eddie Smith,** and others.

3        2.     All non-content subscriber/account information provided pursuant to 18

4  U.S.C. § 2703(c).

5        3.     All non-content dialing, routing, addressing, and signaling information

6  provided pursuant to 18 U.S.C. §§ 3121-3127.

7        4.     Location Information regarding the Target Telephone.

8        Law enforcement personnel (who may include, in addition to law enforcement

9  officers and agents, attorneys for the government, attorney support staff, agency

10  personnel assisting the government in this investigation, and outside technical experts

11  under government control) are authorized to review the records produced by Sprint to

12  locate the things particularly described in this Warrant.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Attachment B -- PAGE 5

USAO # 2022R01041

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800